# IN THE COURT OF APPEALS OF IOWA

No. 17-1215
Filed November 7, 2018

IN RE THE MARRIAGE OF STEPHANIE L. GOLWITZER
AND KEITH M. GOLWITZER

Upon the Petition of
STEPHANIE L. GOLWITZER,
        Petitioner-Appellant,

And Concerning
KEITH M. GOLWITZER,
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Dallas County, Paul R. Huscher,

Judge.


        Stephanie Golwitzer appeals the terms of the dissolution decree of her

marriage to Keith Michael Golwitzer.  **AFFIRMED AS MODIFIED.**


        James R. Hinchliff and Andrew B. Howie of Shindler, Anderson, Goplerud

& Weese, PC, West Des Moines, for appellant.

        Heidi Young and Matthew M. Boles of Parrish Kruidenier Dunn Boles

Gribble Gentry Brown & Bergmann LLP, Des Moines, for appellee.


        Heard by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VAITHESWARAN, Judge.**

Stephanie Golwitzer appeals the spousal support and trial-attorney fee provisions of a dissolution decree.

## I.     *Background Facts and Proceedings*

Stephanie and Keith Michael Golwitzer (Mike) married in 1994 and divorced in 2017.  They had two children, one nineteen and one seventeen at the time of trial.  Custody of the younger child was not contested.

Mike was forty-seven years old at the time of trial.  He graduated from high school and completed a nine-month automotive trade program, after which he began working as a service technician.  He advanced quickly and, by the time of trial, was general manager of a vehicle sales and service company, earning approximately $318,000 per year.  He had no significant health problems.

Stephanie was also forty-seven years old and had a high school diploma.  She began taking community college courses but quit when she was offered employment as a manager at a local sports facility.  When the children were young, she spoke to Mike about going back to school.  According to Stephanie, he told her "it was too expensive."  At the time of trial, she had no plans of furthering her education.

Stephanie held several jobs during the marriage.  Most recently, she worked full-time for a grocery distribution center, earning $15 per hour.  She expected to make a little over $35,000 per year in that position.  The year before trial, she earned $15,413 annually as an associate at the school the children attended.  She held that position for ten years.

Stephanie had certain longstanding medical conditions. The conditions did not prevent her from holding down a full-time job.

The district court ordered Mike to pay Stephanie "spousal support in the amount of $3500 per month . . . until [Stephanie] attains the age of 60, remarries, or the death of either party, whichever event occurs first." The court also ordered him to pay "$10,000 for her attorney fees." Stephanie appealed following the denial of her post-trial motion.

## II.    *Spousal Support*

Iowa Code section 598.21A(1) (2016) sets forth several factors for consideration in determining spousal support, including the length of the marriage, the age and physical and emotional health of the parties, the property distribution, the earning capacity of each party, and any other factors the court may deem relevant. We are obligated to apply these factors. *See In re Marriage of Mauer*, 874 N.W.2d 103, 109 (Iowa 2016). In applying them, "we have discussed three types of spousal support—traditional, rehabilitative, and reimbursement." *In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008).

Stephanie requests traditional alimony. "The purpose of a traditional or permanent alimony award is to provide the receiving spouse with support comparable to what he or she would receive if the marriage continued." *In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015) (citations omitted). "[A]n award of traditional spousal support is normally payable until the death of either party, the payee's remarriage, or until the dependent is capable of self-support at the lifestyle to which the party was accustomed during the marriage." *Id.* at 412; *see also Mauer*, 874 N.W.2d at 111 (same).

The district court's spousal support award of $3500 per month was slated to end in twelve years. In Stephanie's view, "The factual circumstances in this case justify a higher spousal support award for a longer duration." Mike concedes spousal support is warranted, but argues the amount and duration ordered by the district court are "consistent with application of the factors set forth in Iowa Code section 598.21A(1)."

We begin with the amount. At trial, Stephanie sought $9480 per month in traditional spousal support. She calculated the sum using the American Academy of Matrimonial Lawyers guidelines and income figures of $400,000 per year for Mike and $31,200 per year for herself.

On appeal, Stephanie acknowledges those guidelines have not been adopted by our highest court and may be used, if at all, simply as a "useful reality check." *See Mauer*, 874 N.W.2d at 108. She also concedes Mike's income at the time of trial was closer to $300,000 but disputes his assertion that her earnings were closer to $45,000 annually. Using $300,000 and $31,200 as their respective incomes, she advocates for an increase of spousal support to $6190 per month. She asserts her future needs are high because the home awarded to her in the property settlement carried a hefty mortgage payment and health and dental insurance premiums fell on her shoulders after the divorce.

We agree Stephanie's debt load was significant; she had no more than $11,000 of equity in the home and estimated she would pay close to $2000 per month for the mortgage and home insurance. There is also no question her health insurance premiums would no longer be covered by Mike. But Stephanie was relatively young and able to work full-time. She received most of the property she

requested together with the $5000 equalizing payment she requested. Under these circumstances, we conclude the amount of the spousal support award was equitable.

We are less sanguine about the duration of the award. *See Gust*, 858 N.W.2d at 410 ("[D]uration of the marriage is an important factor for an award of traditional spousal support."). The marriage lasted twenty-two years. For most of those years, Mike's earned between six to ten times more than Stephanie did. *See id.* There was scant evidence Stephanie would be able to close the gap between her income and her need. *See In re Marriage of Tieskoetter*, No. 16-2111, 2018 WL 558509, at *6 (Iowa Ct. App. Jan. 24, 2018) ("Based upon Cathy's age, educational background, training, employment skills, and work experience, there is no reason to believe her earnings will ever increase such that she will become capable of earning enough to maintain a comparable standard of living to that she enjoyed during her marriage to Mark—even considering her present income along with additional education or working more hours."). Even if we accept Mike's assertion that Stephanie overstated her monthly expenses, Mike conceded in his trial brief that her expenses were at least $5000 per month and she was unlikely to earn more than $45,000 per year. These figures warranted an award of lifetime spousal support.

Our conclusion is bolstered by Stephanie's limited retirement income. Although the district court awarded her $61,450 of Mike's 401(k) account, this sum—the equivalent of eighteen months of spousal support—did little to ensure Stephanie's financial security in retirement. *See In re Marriage of Hogeland*, 448

N.W.2d 678, 682 (Iowa 1989) (noting spouse's "loss of substantial social security and retirement benefits"). The present record supports an award into retirement.

We recognize it is often difficult to predict what the future holds. *See Gust,* 858 N.W.2d at 418 (noting "future retirement is a question that can be raised only in a modification action subsequent to the initial spousal support order"); *In re Marriage of Michael*, 839 N.W.2d 630, 638 n.8 (Iowa 2013) (declining to disturb the portion of a modification decree concerning the duration but noting "[w]hether . . . obligation to pay traditional spousal support should terminate at that future date will depend on the circumstances of the parties prevailing at that time"). If Stephanie's financial picture improves significantly, Mike is not foreclosed from seeking a modification.

We modify the spousal support award to increase the duration. The spousal support award shall continue until the death of either party or Stephanie's remarriage.

### III.    Attorney Fees

Stephanie contends the district court's award of $10,000 in trial attorney fees was insufficient. Our review is for an abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006).

We discern no abuse. Although Mike was financially capable of paying more, the financial issues raised at trial were not complex and the court reasonably could have concluded an award of one-third the requested amount was sufficient.

Both sides seek an award of appellate attorney fees. An award rests within this court's discretion. *Id.* We order Mike to pay $3000 towards Stephanie's attorney-fee obligation. We deny Mike's request for appellate attorney fees.

**AFFIRMED AS MODIFIED.**